**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1737-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAAZON LIGHTY, a/k/a
RAAZON K. LIGHTY,
RAAZOA K. LIGHTY,
and RAZZON LIGHTY,

     Defendant-Appellant.

_____

Submitted October 16, 2024 – Decided February 5, 2025

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 16-12-0996 and 17-04-0300.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Lauren P. Haberstroh, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the January 3, 2023 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Having reviewed the record in light of applicable law, we affirm.

I.

This incident arises from a shooting in Paterson. In November 2016, then-eighteen-year-old defendant and then-twenty-nine-year-old co-defendant Dominick Deavereaux were armed with handguns and stood outside of 234 Rosa Parks Boulevard. At approximately 2:38 p.m., defendant observed a red Cadillac occupied by Antonio and Otis Johnson,[1] traveling south on Rosa Parks Boulevard when both defendants shot at their car.

Otis, the driver, was shot in the back and attempted to turn the Cadillac onto Godwin Avenue but crashed into a parked car. Otis then exited the car, pointed a handgun in the direction of Rosa Parks Boulevard, and ran towards Carroll Street. Otis's brother, Hatif Clyburn, already driving to Otis's house, heard shots and saw his brother running in the street. He saw Otis then drop the gun in the middle of the street. Clyburn stopped the car and Otis asked Clyburn

_____

[1] We refer to the victims by their first names for the purposes of clarity because they share a common surname. In doing so, we intend no disrespect.

A-1737-22

to drive him to the hospital. Otis got into the car and drove to the hospital. Antonio, the front seat passenger, sustained a fatal gunshot wound.

The Detective's Supplemental report stated Otis's mother, S.J, was interviewed. S.J. was walking to the store before the shooting and saw the "light skinned guy" walking across the street with a gun and "putting down his mask attempting to cover his face." She always paid attention to the "light skinned one" because she did not trust him, and he was always disrespectful. S.J. knew the light skinned one as defendant because he was always on Godwin Avenue and Rosa Parks Boulevard. After S.J. heard shots and "ducked down," and someone pointed toward her son's car.

The shooting was captured by the City camera video on Godwin Avenue and Rosa Parks Boulevard. Paterson Police Cease Fire Unit Detective M. Quinones was in control of the City camera and witnessed the shooting.[2] Prior to the shooting, the detectives identified defendants as they were standing on the corner of Rosa Parks Boulevard and Godwin Avenue in front of a vacant store. Just before the shooting, defendants were seen walking on Rosa Parks Boulevard from Twelfth Avenue and then covered their faces. Quinones also identified both defendants from photographs taken from the city camera video.

---

[2] The record does not contain a first name for Detective Quinones.

Paterson Police detectives also viewed video footage from a camera owned by the 230 Liquor store located at 230 Rosa Parks Boulevard that captured the shooting at another angle. Those videos and photographs show defendant's face prior to the shooting, defendant pulling a mask over his face, and then firing the gun in the direction of the car Otis was driving.

In April 2017, a Passaic County grand jury returned Indictment No. 17-04-0300, charging defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) or N.J.S.A. 2C:11-3(a)(2); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:11-3(a).

Deavereaux was charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1) or N.J.S.A. 2C:11-3(a)(2); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:11-3(a);

On November 27, 2017, defendant pled guilty to two counts under Indictment No. 17-04-0300: first-degree aggravated manslaughter, amended from first-degree murder; and second-degree aggravated assault, amended from

first-degree attempted murder. During the plea hearing, defendant admitted to committing first-degree aggravated manslaughter and second-degree aggravated assault. He testified that he understood the nature of his charges—by shooting his gun at the car there was a high probability that one of the bullets would strike and either kill or seriously injure one or both victims. Defendant stated that he further understood that his actions reflected an act of recklessness under circumstances manifesting extreme indifference to the value of human life. Relevant to this appeal, defendant also responded that he was satisfied with his attorney's services and advice, his attorney had sufficient time to discuss the case with him, and his attorney answered all questions to his satisfaction.

Defendant acknowledged and understood the terms and maximum sentences under the plea agreement, and that he waived his right to pre-trial motions, a jury trial, and to confront and cross-examine witnesses. Satisfied with defendant's responses, the trial court accepted defendant's guilty plea after finding the plea was entered knowingly and voluntarily.

Defendant also pled guilty to third-degree possession of heroin, a controlled dangerous substance (CDS), with intent to distribute within 1,000 feet of a school, under Indictment No. 16-12-0996.[3]

Thereafter, on February 16, 2018, defendant was sentenced before the same judge that accepted his guilty plea. At sentencing, trial counsel argued defendant was "unlucky enough in that street circumstance, notwithstanding the tender age of [nineteen] that allowed himself to get sucked into something that caused someone else's death." Trial counsel further argued: "And he's gonna have to pay that price, unfortunately for him, the terms of this plea agreement will put him out of jail and back in society at a young enough age that he still will have a life. And he understands that[,] and he appreciates [it]."

The sentencing court considered defendant's age stating, "You are so young[,] and you took so much away from yourself, but that was your choice." The court further reasoned: "I note you are very young. You're [nineteen] years old. You did maintain your guilty plea at the time of your pre-sentence report."

---

[3] Indictment No. 16-12-0996 is related to heroin distribution on August 4, 2016. The indictment and the judgment of conviction is not part of the record and appendix.

The court went on to consider defendant's health, substance abuse issues, ninth grade education, and that he is the father of a young child.

The sentencing court found aggravating factors two, three, six, and nine and no mitigating factors under N.J.S.A. 2C:44-1 prior to imposing sentence. Defendant was then sentenced to a sixteen-year term of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, for first-degree aggravated manslaughter to run concurrent with a ten-year term of imprisonment for second-degree aggravated assault and a concurrent five-year term of imprisonment for the CDS conviction. Defendant did not file a direct appeal challenging his conviction or sentence.

Defendant timely filed a self-represented PCR petition, asserting an ineffective assistance of trial counsel claim for failing to interview Otis to "say [defendant] was not the shooter" and Clyburn regarding Otis's possession of a gun, and failing to file any motions or request a bail reduction. Following the appointment of PCR counsel, counsel's brief argued: (1) trial counsel failed to request a Wade[4] hearing concerning the show-up identification of defendant

---

[4] United States v. Wade, 388 U.S. 218, 235 (1967); State v. Henderson, 208 N.J. 208, 289 (2011). The purpose of a Wade/Henderson hearing is for the trial court to determine whether an identification procedure created a substantial likelihood of irreparable misidentification, such that the identification was

made by S.J.; (2) trial counsel failed to request an N.J.R.E. 104 or <u>Wade</u> hearing concerning the identification of defendant made by Detective Quinones; and (3) trial counsel failed to argue mitigating factor thirteen at sentencing because defendant was eighteen years old at the time of the offense while Deavereaux was "seven years his senior."

On December 9, 2022, the PCR court heard oral argument and then rendered an oral opinion and written order, denying defendant's PCR petition without an evidentiary hearing. The court found trial counsel's representation did not fall below an objective standard of reasonableness. The court reasoned trial counsel "negotiated an extremely favorable global plea bargain" when defendant was faced with "potentially consecutive sentences in the first-degree range for murder and attempted murder." Defendant's claim that trial counsel was ineffective for not filing any motion was "refuted by the confirmatory identification of a witness."

The court also determined trial counsel exercised a sound trial strategy to "forego filing a motion for a <u>Wade</u> hearing in order to obtain the benefit of a plea bargain." Lastly, the court found the plea colloquy showed defendant

---

unreliable and should be suppressed at trial. <u>Wade</u>, 388 U.S. at 229-30; <u>Henderson</u>, 208 N.J. at 289.

understood that he waived his right to file any pretrial motions, he did not seek clarification from the court regarding that waiver, and he elected to forego the filing of motions and pled guilty.

As to mitigating factor thirteen, the court found plea counsel alluded to defendant's young age and the circumstances that played into his conduct. The court determined that "[e]ven giving [defendant] a favorable inference, it was unlikely that receiving mitigating factor [thirteen] would have changed the sentence that [d]efendant ultimately received."

The PCR court concluded defendant failed to establish a prima facie case of ineffective assistance of counsel under the two-prong test of Strickland v. Washington, 466 U.S. 668, 687, 694 (1984), and State v. Fritz, 105 N.J. 42, 56-58 (1987) (adopting the Strickland two-part test in New Jersey). Accordingly, the court found defendant was not entitled to an evidentiary hearing. A memorializing order was entered. This appeal followed.

II.

On appeal, defendant presents the following arguments:

POINT ONE

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIMS THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE TO SUPPRESS

9

IDENTIFICATIONS AND FAILING TO ARGUE ADEQUATELY AT SENTENCING.

POINT TWO

THIS MATTER MUST BE REMANDED FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW ON [DEFENDANT]'S PRO SE CLAIMS THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR FAILING TO INVESTIGATE.

The factual and legal determinations made by a PCR court are reviewed de novo when an evidentiary hearing is not held. State v. Harris, 181 N.J. 391, 420-21 (2004); State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020). A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

When the defendant's basis for relief is premised on a claim of ineffective assistance of counsel, he is required to satisfy the two-prong test enunciated in Strickland by demonstrating that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant's defense. Strickland, 466 U.S. at 687 (1984) and Fritz, 105 N.J. at 56-58. A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. State v. Nash, 212 N.J. 518, 542 (2013).

When reviewing such claims, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy[.]" Fritz, 105 N.J. at 54.

Our Supreme Court has also ruled that PCR proceedings are not a substitute for a direct appeal. State v. Hannah, 248 N.J. 148, 178 (2021). The Court has explained that "a defendant is 'generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal'" unless one of three exceptions applies. Ibid. (quoting Nash, 212 N.J. at 546); see also R. 3:22-4(a)(1) to -(3).

A.    Motion to Suppress Identifications.

Defendant argues that his trial counsel failed to move to suppress eyewitness identifications of S.J. and Detective Quinones. Defendant argues the identifications showed evidence of suggestiveness. Specifically, defendant contends: S.J.'s identification was based on a single photograph display; S.J.'s identification was not made in a double-blind fashion; she was not provided with neutral pre-identification instructions; police officers failed to clarify how S.J. learned defendant's name from her children; and the identification took place

more than two hours after her son was shot. Had trial counsel filed a motion to suppress, the hearing would have shown the identification was unreliable.

Defendant argues trial counsel's performance was similarly defective for failing to investigate Quinones's identification because it was also suggestive. He argues there were no facts as to how Quinones identified defendant, and counsel should have conducted an investigation. Accordingly, trial counsel should have moved to suppress the identification.

"[T]o satisfy the [first prong of the] Strickland/Fritz standard when an ineffective assistance claim is based on the failure to file a suppression motion . . . defendant must establish that the underlying claim is meritorious." State v. Barclay, 479 N.J. Super. 451, 459-60 (App. Div. 2024).

"A confirmatory identification occurs when a witness identifies someone he or she knows from before but cannot identify by name." State v. Pressley, 232 N.J. 587, 592-93 (2018). In seeking to exclude an out-of-court identification, defendant must show "some evidence of suggestiveness tied to a system variable which could [have led] to a mistaken identification." State v. Anthony, 237 N.J. 213, 233 (2019) (citing Henderson, 208 N.J. at 288-89).

We are unpersuaded by defendant's arguments, which are not supported by the record. The PCR court's denial is supported by credible evidence. S.J.

12

identified defendant because he was familiar to her and immediately prior to the shooting, S.J. saw defendant pull the mask over his head and hold a gun. Defendant has not pointed to any evidence in the record that demonstrated suggestiveness in the photograph show-up that would have led to a substantial likelihood of mistaken identification.

Similarly, defendant has not demonstrated any facts to show Quinones's identification was suggestive or unreliable. Quinones witnessed the shooting in real time and identified defendant from photos pulled from the Paterson crime camera video. Other than claiming "[t]here is no indication as to how he identified [defendant,]" defendant fails to produce any evidence of unreliability. We, therefore, reject defendant's baseless argument.

We are satisfied the PCR court correctly ruled the witnesses' confirmatory identification was not suggestive and a Wade/Henderson hearing was not required. Accordingly, a suppression motion was not needed. See Barclay, 479 N.J. Super. at 469 (citing State v. O'Neal, 190 N.J. 601, 619 (2007)).

We agree with the PCR court that trial counsel's decision to not file a motion for Wade/Henderson hearing was trial strategy to obtain a more favorable plea and sentence. Moreover, defendant elected to waive all pretrial motions, and he cannot decry a missed opportunity.

13

Based upon our de novo review, we conclude defendant has failed to establish the motion to suppress the confirmatory identifications by S.J. and Quinones would have been meritorious and trial counsel's failure to file those motions resulted in prejudice. Therefore, we discern no error by the PCR court.

B.    Failure to Argue the Youth Mitigating Factor at Sentencing.

Defendant argues that trial counsel failed to argue that he was eighteen years old at the time of the shooting and the court never considered N.J.S.A. 2C:44-1(b)(13). Defendant further argues the PCR court erred in finding that he had not satisfied his burden under Strickland based on trial counsel error.

Here, based on our de novo review of the record, we are convinced the court correctly denied defendant's PCR petition because he did not satisfy the "exacting standard" regarding the second prong of Strickland. State v. Gideon, 244 N.J. 538, 551 (2021). Defendant has failed to affirmatively demonstrate there is a reasonable probability that but for counsel's alleged error in not arguing his young age, the result of his sentencing proceeding would have been different.

As noted by the PCR court, even if the sentencing court gave defendant a favorable inference, it was "unlikely that receiving mitigating factor [thirteen] would have changed the sentence the [d]efendant ultimately received." At

14

sentencing, the judge found the aggravating factors outweighed the mitigating factors in this matter. The sentencing court appropriately considered defendant's age, minor adult offense history, as well as the gravity and seriousness of the offense in finding aggravating factors two, three, six, and nine and no mitigating factors.

Having reviewed the record and considering the applicable law, we conclude defendant has not demonstrated the court was deprived of information and arguments regarding his youth. We are convinced defendant has failed to sustain his burden under either Strickland prong.

C.    Defendant's Self-Represented PCR Claims.

Lastly, defendant argues the PCR court did not rule on his claims that trial counsel was ineffective for failing to investigate witnesses that supported his defense or stated he was not the shooter. The mere raising of a claim for PCR does not entitle defendant to an evidentiary hearing and defendant "must do more than make bald assertions that he [or she] was denied the effective assistance of counsel." State v. Porter, 216 N.J. 343, 355 (2013) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)); see also R. 3:22-10(e)(2) (stating that a court shall not hold an evidentiary hearing if "the defendant's allegations are too vague, conclusory or speculative"). Thus, "when

a [defendant] claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170.

Here, defendant made only bald assertions in his PCR certification, which were insufficient to support a PCR application. Other than the bald assertions, defendant provided no other evidence that he was prejudiced by counsel's alleged failure to interview Otis and Clyburn. Moreover, defendant's assertions are contradicted by the photographs, camera video footage, and confirmatory identification showing his participation in the shooting, as noted above. We conclude defendant's argument rests on bald assertions that are insufficient to establish counsel's representation was deficient.

In sum, defendant failed to sustain his burden of establishing a prima facie case of ineffective assistance of counsel under the Strickland standard. We therefore affirm the court's order denying his PCR petition. The court did not abuse its discretion in denying an evidentiary hearing. Porter, 216 N.J. at 354-55.

To the extent we have not discussed them expressly, all other arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1737-22